DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant Reginald Wilson has appealed from his conviction of drug possession in the Medina County Court of Common Pleas. This Court affirms.
 I {¶ 2} On April 10, 2002, Appellant was a passenger in a vehicle traveling northbound on Interstate 71 that was pulled over by the Ohio State Highway Patrol ("Patrol"). The car was pulled over due to an improper license plate and improper tint on the windows. Appellant was the front-seat passenger, Hakim Abdul ("Abdul") was the driver, and William Chandler ("Chandler") was the rear-seat passenger. The driver was arrested on a felony warrant. Appellant and Chandler were removed from the vehicle and placed in a Patrol car. During the road-side inventory of the vehicle, the Patrol discovered sixteen vials of liquid phencyclidine ("PCP"), a schedule II controlled substance, in the passenger compartment of the car.
 {¶ 3} On October 2, 2002, Appellant was indicted by the Medina County Grand Jury for aggravated possession of drugs in violation of R.C. 2925.11(A), (C)(1)(d). He was charged with possession of PCP in an amount equal or exceeding fifty times bulk but less than one-hundred times bulk, which is a felony of the first degree.[1]
 {¶ 4} Appellant waived his right to a jury and a bench trial was held on August 12, 2003.[2] After the testimony of three Patrol Troopers and the admission of four photographs, a videotape, and a lab report, the State rested its case. Appellant made a Crim.R. 29 motion which was denied by the trial court. Appellant then presented his case, which consisted of testimony from Chandler, a co-defendant, and Appellant. Before closing arguments, Appellant renewed his Crim.R. 29 motion and it was overruled. On September 10, 2003, the trial court found Appellant guilty as charged in the indictment. Appellant was sentenced to a mandatory three year prison term. See R.C. 2929.13(F).
 {¶ 5} Appellant has timely appealed his conviction, asserting two assignments of error. We have consolidated his assignments of error for ease of analysis.
 II Assignment of Error Number One
"The appellant's conviction was against the manifest weight of the evidence."
 Assignment of Error Number Two
"The trial court committed prejudicial error against the appellant and denied him due process of the law when it denied his motion for aquittal when there was insufficient evidence to support a verdict of guilty."
 {¶ 6} In his two assignments of error, Appellant has argued that his drug possession conviction was not supported by sufficient evidence and that it was against the manifest weight of the evidence. Specifically, Appellant has argued that the State failed to prove, beyond a reasonable doubt, that Appellant possessed the PCP that was found in the car. We disagree.
 {¶ 7} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at 3. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citingState v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v. Jenks (1991), 61 Ohio St.3d 259, 279. Furthermore:
"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Jenks, 61 Ohio St.3d paragraph two of the syllabus; see, also, Thompkins, 78 Ohio St.3d at 386.
In State v. Roberts, this Court explained:
"[S]ufficiency is required to take a case to the jury. * * * Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4. (emphasis omitted).
 {¶ 8} In determining whether a conviction is against the manifest weight of the evidence an appellate court:
"[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339,340.
A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than it supports the other. Thompkins, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. at 388. An appellate court must make every reasonable presumption in favor of the judgment and findings of fact of the trial court.Karches v. Cincinnati (1988), 38 Ohio St.3d 12, 19. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983),20 Ohio App.3d 172, 175; see, also, Otten,33 Ohio App.3d at 340.
 {¶ 9} Appellant was convicted of aggravated possession of drugs, specifically PCP, a schedule II controlled substance, in violation of R.C. 2925.11(A), which states that "[n]o person shall knowingly obtain, possess, or use a controlled substance." R.C. 2925.11(A),(C)(1); R.C. 3719.41.
 {¶ 10} Possession of drugs can be either actual or constructive. See State v. Haynes (1971), 25 Ohio St.2d 264. The Ohio Supreme Court has held that a person has constructive possession of a thing or substance when he is able to exercise dominion or control over it. State v. Wolery (1976),46 Ohio St.2d 316, 329, certiorari denied (1976), 429 U.S. 932,97 S.Ct. 339, 50 L.Ed.2d 301. Furthermore, drugs that are found in plain view and are in close proximity to a defendant can establish constructive possession of those drugs. State v. Pruitt (1984),18 Ohio App.3d 50, 58; see, also, State v. Boyd (1989),63 Ohio App.3d 790. Circumstantial evidence alone is sufficient to support the element of constructive possession. Jenks,61 Ohio St.3d at 272-273.
 {¶ 11} During the trial, the State presented testimony from three Patrol Troopers. The State's first witness, Trooper Cirilo testified that on April 10, 2002, he was working as part of a four man team patrolling Interstate 71 ("71"). He testified that while patrolling northbound 71 in Medina County, he observed a vehicle that quickly reduced its speed as it approached his Patrol car. To investigate further, Trooper Cirilo entered the highway; he testified that the windows on the vehicle were too tinted under Ohio law and that when he ran a check of the license plate he learned that the plate did not match the car and that the owner of the plate had an active felony warrant. While following the vehicle and waiting for backup, Trooper Cirilo testified he observed "a lot of movement. A lot of firm, active movements . . . right even before I stopped the vehicle. Everybody was moving in the vehicle." He testified that after pulling the vehicle over Abdul, the driver, first stated they were going to a salvage pool in Canton to buy cars and then he stated that they were coming from the salvage pool. Trooper Cirilo testified that Appellant stated he did not know where they were going or if they went to the salvage pool because he had smoked some marijuana and fell asleep. The rear-seat passenger, Chandler, told Trooper Cirilo that they had just returned from the salvage pool in Canton. Trooper Cirilo testified that Chandler stated he had marijuana on him and that marijuana was found on Chandler.
 {¶ 12} Trooper Cirilo continued his testimony stating that Appellant and Chandler were placed in the rear of Trooper Menges' Patrol car. He explained that the Patrol car is equipped with a video-audio recording system; according to Trooper Cirilo, the system visually records the scene in front of the Patrol car and it records the audio from the rear-passenger area of the car. He testified that the Patrol car has two posted warnings, written in red, that notify passengers that their conversations "are subject to being videotaped and recorded." He further testified that anyone who is in the backseat would see the notices.
 {¶ 13} Trooper Cirilo testified that during the inventory of the vehicle the Patrol discovered three shoeboxes in the rear-passenger area of the vehicle. He testified that all three boxes had shoes in them and that the sixteen PCP vials were beneath the shoes in one of the shoeboxes. Trooper Cirilo testified that the drug shoebox was in the middle, rear-passenger area on the hump that was on the floorboard, directly behind the armrest that folds up and down. When Trooper Cirilo was asked who was sitting in front of the drug shoebox he testified that Appellant was in front of that area. Trooper Cirilo testified that the drugs equaled fifty times the bulk amount.
 {¶ 14} Trooper Menges testified next for the State. He began by testifying to his general participation in the vehicle stop. He testified that Appellant first told him they had just bought some shoes, but he then denied knowing about the shoes. Trooper Menges testified that the shoes were three different sizes, each pair matching the size of one of the men in the vehicle; the shoebox with the drugs in it matched Chandler's shoe size. Trooper Menges testified that Appellant, Abdul, and Chandler all denied knowing about the shoes and that no receipts were found in the vehicle.
 {¶ 15} Before admitting its exhibits, the State called Trooper Helton who testified to his experience with drug arrests. He testified that people admit to having small amounts of drugs on them or to using drugs, as Appellant and Chandler did, in hopes that officers will not look for more drugs. At the close of the State's case, without objection from Appellant, the State asked the trial court to admit the photographs of the vehicle, the shoeboxes, the drugs, the lab results, and the videotape that provided audio of Appellant and Chandler in the back of Trooper Menges' Patrol car. The trial court admitted all of the State's exhibits into evidence.
 {¶ 16} A review of the admitted videotape, which the trial court viewed outside of the courtroom, confirms that Appellant knew about the drugs. The first conversation between Appellant and Chandler concerned where in the car the drugs were located, with both men knowing the drugs were in the shoeboxes. The conversation then turned to whether their being stopped was a possible set-up and who should have been driving. Next, Appellant can be heard telling Chandler "shhshh" and the two start whispering, which occurs throughout the videotape.
 {¶ 17} Even though Appellant and Chandler had previously talked about the drugs, when a Trooper came to the Patrol car to ask them about the vials they both denied any knowledge of the drugs. After the Trooper left, Appellant and Chandler can be heard discussing how much money they have on them and the location of their cell phones. When Chandler asked Appellant what they were going to do, Appellant can be heard answering "shhshhh." The two had several conversations about their "story," with one stating that they each need to know what they were doing and the other responding that that issue is something for their lawyers. Appellant and Chandler discussed the vehicle and the bad tags and how they would have been okay if the tags had been good and if Abdul didn't have a warrant. They can be heard talking about how there was no where to stash the drugs once they were pulled over. More whispering occurs after Appellant described the packaging of the drugs.
 {¶ 18} At one point in their conversation, Chandler can be heard asking if they are still in Columbus, to which Appellant starts reading him road signs. Appellant and Chandler then comment on what a "big bust" this is for the Troopers. They also discuss where else they could have hid the drugs and that "nobody" thought about hiding them better. The two then begin to worry about what Abdul is telling the Troopers. After going over their story again, Chandler explained that he did not know what to say because nobody discussed the plan with him, to which Appellant responds "shhshh" and the whispering resumes. By the end of the conversation, the two are agreeing on how they did not know the "car wasn't right" and that they could have taken a different vehicle.
 {¶ 19} After his Rule 29 motion was denied, Appellant called Chandler to the stand Chandler began his testimony by explaining that he, Appellant, and Abdul were supposed to visit an auction and that he and Appellant were going to drive any purchased vehicles back to Cleveland Chandler testified that they stopped somewhere along the way, he was not sure where, and that he and Appellant exited the vehicle and then Abdul exited the vehicle. They all separated. When Chandler saw Abdul again Abdul showed him that he had some "water," which he explained is slang for PCP. Chandler first testified that he told Appellant about the "water" and then they all got back in the car. Chandler then testified that he did not tell Appellant about the "water" until after they were pulled over and that Appellant did not know about the "water."
 {¶ 20} Chandler admitted to being a lifelong friend of Appellant and that the two were whispering in the Patrol car. Chandler also admitted that he was convicted of possession of PCP on this case and that he has three other felony convictions, two for drug violations. Chandler provided no explanation for why the "water" was found in the shoebox matching his shoe size or why the three shoeboxes were in the car. He testified that all of the shoes were Abdul's and that maybe Abdul was going to sell the shoes. Chandler testified that he was upset that Abdul had not told him about the "water" and that Abdul did not tell him the vehicle had the wrong license plate. When asked about specific statements heard on the videotape, Chandler mainly denied making them or stated he could not remember what he said in the Patrol car.
 {¶ 21} Appellant took the stand on his own behalf and testified that he learned of the "water" from Chandler after they were pulled over. Appellant testified that he did not know about the "water" and that it was not his. Appellant testified that he usually takes Interstate 77 to Akron/Canton and that he did not know where they were going to get the vehicles. He denied getting upset with Chandler while in the Patrol car and he denied making the statements on the videotape. Appellant further denied telling Chandler on the videotape to "Shhh. Be quiet." Appellant admitted to two prior drug trafficking convictions, but explained that they were old cases.
 {¶ 22} At the close of Appellant's case, the State called Trooper Cirilo as a rebuttal witness. He testified that on the day of the incident, Chandler told him that the trio went to the salvage yard and Appellant and Abdul exited the vehicle and that he stayed in the vehicle.
 {¶ 23} Before rendering its verdict, the trial court informed the parties that it wanted to watch and listen to the videotape again. When the trial court reconvened it found Appellant guilty of aggravated possession of PCP.
 {¶ 24} After careful review of the entire record, weighing the evidence and all reasonable inferences and considering the credibility of the witnesses, this Court cannot conclude that the trial court clearly lost its way when it found Appellant guilty of aggravated drug possession. The trial court was in the best position to adjudge the credibility of witnesses and give proper weight to their testimony. The credible testimony of the three Troopers and the State's evidence, specifically the videotape from the back of Trooper Menges' Patrol car, established that Appellant constructively possessed PCP.
 {¶ 25} Based on the foregoing, this Court cannot find that Appellant's conviction was against the manifest weight of the evidence. Accordingly, Appellant's first assignment of error lacks merit.
 {¶ 26} As previously stated, "a determination that [a] conviction is supported by the weight of the evidence [is] also * * * dispositive of the issue of sufficiency." Roberts, supra at 4. Accordingly, having found that Appellant's conviction was not against the manifest weight of the evidence, this Court need not discuss further his challenge to the sufficiency of the evidence. Therefore, Appellant's second assignment of error is not well taken.
 III {¶ 27} Appellant's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Carr, P.J., Batchelder, J., concur.
[1] Per a journal entry dated December 12, 2002, upon motion by the State, the trial court amended the indictment to reflect that PCP is a schedule II controlled substance.
[2] The trial transcript and the Appellant state that the trial was held on August 11, 2003, but the trial court's journal entry states the trial was held on August 12, 2003. A trial court speaks through its journal entry. Therefore, this Court will use August 12, 2003 as the trial date.