DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Daniel Wilhoyte, appeals from the judgment of the Medina County Court of Common Pleas. This Court affirms.
 I. {¶ 2} Appellant, Daniel Wilhoyte, began dating Pamela Logan in 2006. In June of 2007, Wilhoyte, who was living in California, agreed to drive Logan in his R.V. to Brunswick, Ohio to visit her son. On the night of June 25, 2007, police officers from the City of Medina responded to a call from someone at a truck scale located near Brunswick, Ohio, who reported seeing a woman, later identified as Logan, screaming for help. Sergeant Dave Birckbichler arrived on the scene and observed Logan yelling and crying. She stated that Wilhoyte had assaulted and choked her. Officers learned that Logan had been travelling with Wilhoyte in his R.V. and that Wilhoyte had left Logan at the truck scales after they got into a dispute. *Page 2 
 {¶ 3} As Birckbichler continued his interview of Logan, he discovered what he suspected was marijuana and crystal methamphetamine in her hands. Logan was ultimately arrested and charged with drug possession. Based on Logan's report that Wilhoyte had assaulted her, Birckbichler also prepared a warrant for Wilhoyte's arrest for assault.
 {¶ 4} Logan told Birckbichler that she and Wilhoyte had previously been in Mexico for six months and had been planning to deliver a large quantity of crystal meth to Kentucky. With this information, Officer Ed Kinney, a narcotics officer with the City of Medina, arranged for Logan to place a series of phone calls to Wilhoyte and ask him to pick her up. Kinney was hoping that Wilhoyte would give away his location during one of these phone calls. Kinney recorded three such conversations and officers were able to determine where Wilhoyte had parked the R.V. In addition, during one of these conversations, Wilhoyte accused Logan of taking either "my dope" or taking "the dope".
 {¶ 5} Kinney located Wilhoyte's R.V. and looked inside. He saw Wilhoyte sitting directly behind the front passenger seat working on a laptop computer. Thereafter, Kinney knocked on the door of the R.V. and announced that the police were present with a warrant for his arrest. The deputies then entered the R.V. and placed Wilhoyte under arrest pursuant to the warrant for assault. Once inside, Kinney observed an open brown paper bag on the floor. The contents of this brown paper bag included a baggie of crystal meth, a marijuana pipe, three meth pipes, a digital scale, a green bag that contained more crystal meth as well as small butane torches. Kinney found this brown bag three to four feet from where Wilhoyte was sitting. In addition to this evidence, Kinney found more crystal meth and marijuana in a laptop computer bag, located two feet away from where Kinney had observed Wilhoyte working at the computer. Officers located additional crystal meth and drug paraphernalia in a cabinet above where *Page 3 
Wilhoyte had previously been sitting. The amount of crystal meth found in Wilhoyte's R.V. totaled 123 grams.
 {¶ 6} Thereafter, Wilhoyte was indicted on one count of possession of methamphetamine, in violation of R.C. 2925.11(A)(C)(1)(c), a felony of the second degree. Wilhoyte filed a motion to suppress all the evidence seized as a result of the search of his R.V. The court held a hearing on his motion at which the court denied the motion. Wilhoyte's case proceeded to a jury trial. At the conclusion of the trial, the jury found Wilhoyte guilty. The trial court sentenced him to five years in prison. Wilhoyte filed a timely appeal. He has raised one assignment of error for our review.
 II ASSIGNMENT OF ERROR "[WILHOYTE] WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."
 {¶ 7} In Wilhoyte's sole assignment of error, he contends that he was denied the effective assistance of counsel in violation of the Sixth andFourteenth Amendments to the U.S. Constitution and Article 1, Section 10
of the Ohio Constitution. We disagree with Wilhoyte's assignment of error.
 {¶ 8} In evaluating an ineffective assistance of counsel claim, this Court employs the two step process as described in Strickland v.Washington (1984), 466 U.S. 668, 687. First, the Court must determine whether there was a "`substantial violation of any of defense counsel's essential duties to his client.'" State v. Bradley (1989),42 Ohio St.3d 136, 141, quoting State v. Lytle (1976), 48 Ohio St.2d 391, 396, vacated in part on other grounds. Second, the Court must determine if prejudice resulted to the defendant from counsel's ineffectiveness.Bradley, *Page 4 42 Ohio St.3d at 141-142, quoting Lytle, 48 Ohio St.2d at 396-397. Prejudice exists where there is a reasonable probability that the trial result would have been different but for the alleged deficiencies of counsel. Bradley, 42 Ohio St.3d at paragraph three of the syllabus. The defendant bears the burden of proof, and must show that "`counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" State v. Colon, 9th Dist. No. 20949, 2002-Ohio-3985, at ¶ 48, quoting Strickland, 446 U.S. at 687.
 {¶ 9} At trial, Wilhoyte's counsel sought to shift the blame for the drugs from Wilhoyte to Logan. In his cross-examination of Birckbichler, Wilhoyte's counsel elicited hearsay testimony regarding what Logan told Birckbichler on June 25, 2007. Wilhoyte's counsel questioned Birckbichler regarding what Logan had said about her knowledge of the drugs found in the R.V. This opened the door for the State to question Birckbichler about what otherwise would have been inadmissible hearsay evidence, i.e., what Logan told Birckbichler. The State was, therefore, able to elicit testimony from Birckbichler regarding where Logan and Wilhoyte had been before coming to Brunswick and what they were planning to do with the drugs. Wilhoyte alleges that this testimony opened the door for the State to elicit testimony to demonstrate that he had knowledge of and possession of the drugs found in the R.V. Wilhoyte claims his counsel was ineffective in eliciting this hearsay testimony and thereby opening the door for evidence that supported the elements of the crime. Wilhoyte maintains that but for his trial counsel's errors, there was a reasonable probability that the result of the trial would have been different.
1. Counsel's performance was not seriously flawed and deficient.
 {¶ 10} With regard to the first prong under Strickland, we find no serious flaw or deficiency with Wilhoyte's counsel's decision to elicit testimony regarding what Logan told *Page 5 
Birckbichler about her knowledge of the drugs. In State v. Smith (Sept. 1, 1987), 2d Dist. No. 9963, at *3, the Second District Court of Appeals considered facts similar to those in the case before us. In that case, trial counsel introduced statements of a deceased third party in an attempt to show that the third party was guilty and had shifted the blame to the defendant to avoid his own prosecution. In rejecting the appellant's argument that counsel had been ineffective, the appellate court stated:
 "Although counsel's tactics proved unavailing at trial, even debatable trial strategy does not necessarily constitute a deprivation of the effective assistance of counsel. *** Counsels' efforts to direct the blame to the only other possible person who could have committed the offense was a tactical choice and we must defer to their judgment. We find that substantial justice was done and that counsels' strategy did not amount to a breach of any essential duty owed to appellant." (Internal citations omitted.) Id. at *3.
 {¶ 11} In the present case, Wilhoyte's counsel tried to place the blame on Logan, the only other person who could have possessed the drugs. Trial counsel's closing argument drove this point home, where he explicitly argued that the drugs belonged to Logan. The record reflects that Wilhoyte's counsel was faced with a challenging set of facts: officers had found his client in the R.V. surrounded by twenty three grams of crystal meth. Given this incriminating circumstance, it was sound trial strategy to attempt to place the ownership of these drugs on Logan who had a small amount of drugs on her person when she was arrested. Because Logan did not testify, the only way for Wilhoyte's counsel to elicit testimony to support this defense was to question Birckbichler about what Logan knew about the drugs. The fact that this tactic opened the door to questions from the State regarding where Logan and Wilhoyte were going does not diminish the legitimate aim of counsel's cross-examination. Given the deference we must show to trial counsel's strategy decisions, we conclude that Wilhoyte's counsel's decision was neither seriously flawed nor deficient. *Page 6 
 2. The outcome of the trial would not have been different even ifcounsel's actions were deficient.
 {¶ 12} Even if we determined that Wilhoyte's counsel's actions were deficient under the first prong of Strickland, the alleged errors would not reasonably alter the result of the trial. Possession of drugs can be actual or constructive. State v. Wilson, 9th Dist. No. 03CA0136-M,2004-Ohio-5184, at ¶ 10. In addition, a person has constructive possession of a thing or substance when he is able to exercise dominion or control over it. Id. citing State v. Wolery (1976),46 Ohio St.2d 316, 329. Drugs found in plain view and in close proximity to a defendant can establish constructive possession. Wilson, supra, citingState v. Pruitt (1984), 18 Ohio App.3d 50, 58.
 {¶ 13} Officer Kinney found Wilhoyte in his R.V. working at his laptop computer. The R.V. contained a significant amount of crystal meth. Indeed, the record reflects that officers found crystal meth in (1) a brown paper bag, (2) the bag inside the brown paper bag, (3) the cabinets near where Wilhoyte was working, (4) a laptop bag, and (5) the empty cigarette boxes of a brand that Wilhoyte usually smokes. In addition, during one of the three recorded phone conversations, Wilhoyte accused Logan of taking "the dope" or "my dope", thereby indicating that the drugs belonged to him.
 {¶ 14} The testimony at issue here simply indicated where Wilhoyte and Logan intended to take the drugs. On balance, very little hearsay testimony was elicited to the effect that these drugs belonged to Wilhoyte. Even so, such testimony was not a key element of the State's case given the significant amount of circumstantial evidence supporting his constructive possession of drugs. Thus, Wilhoyte has failed to show that but for his trial counsel's alleged deficiency, the outcome of the trial would have been different. Wilhoyte's sole assignment of error is overruled. *Page 7 
 III. {¶ 15} Wilhoyte's sole assignment of error is overruled. The judgment of the Medina County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
CARLA MOORE FOR THE COURT
DICKINSON, J. BELFANCE, J. CONCUR.
 *Page 1