[Cite as *State v. Douglas*, 2023-Ohio-4175.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | C.A. No. 23CA011957 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| SCOTT DOUGLAS | ELYRIA MUNICIPAL COURT COUNTY OF LORAIN, OHIO |
| Appellant | CASE No. 2022CRB02195 |

DECISION AND JOURNAL ENTRY

Dated: November 20, 2023

STEVENSON, Judge.

**{¶1}** Appellant, Scott Douglas, appeals from judgment of the Elyria Municipal Court granting the State of Ohio's motion for imposition of suspended sentence. This Court affirms.

I.

**{¶2}** Mr. Douglas pleaded guilty in the Elyria Municipal Court to one count of menacing by stalking, in violation of R.C. 2903.211, a misdemeanor of the first degree. The trial court immediately sentenced Mr. Douglas to serve 180 days in the Lorain County Jail, with 165 suspended. Mr. Douglas was ordered to report to the Lorain County Jail that same day, December 19, 2022, at 8:00 p.m. to serve 15 days.

**{¶3}** The balance of Mr. Douglas' jail sentence, 165 days, was suspended on the following conditions:

(1) Mr. Douglas has no further incidents of the same or similar nature for five years, commencing December 19, 2022;

(2) Mr. Douglas has no contact with the victim, B.P., for five years commencing December 19, 2022, as monitored by probation;

(3) Mr. Douglas "destroy all copies physical, electronic, digital, etc. of 'our story' and may not recreate or disseminate;"

(4) Mr. Douglas does not carry any firearm outside of his residence; and

(5) Mr. Doulas remain in compliance with all conditions of Tier 2 probation.

Mr. Douglas reported to jail that day as instructed

{¶4}    The State filed a motion for imposition of sentence on January 3, 2023. At issue in the State's motion are two letters Mr. Douglas sent to his adult daughter, L.J., and his son-in-law, M.J. The letters were post-marked December 20, 2022.  The State argued that the letters violated the court's order and a condition of the suspended portion of Mr. Douglas' sentence, namely that Mr. Douglas "destroy all copies physical, electronic, digital, etc. of 'our story' and may not recreate or disseminate [our story][.]"  The State alleged that the letters sent to L.J. and M.J. were copies or recreations of "our story" in violation of Mr. Douglas' sentencing conditions.

{¶5}    The trial court held a hearing on the State's motion for imposition of suspended sentence. M.J. testified at the hearing on behalf of the State. M.J. testified that, on December 22, 2022, two letters were delivered to his residence, "one addressed to [himself]; one addressed to my wife, [L.J.]."  The letters' envelopes were postmarked December 20, 2022.

{¶6}    M.J. testified that the letters, titled "Our Life Story," explained "[Mr. Douglas] and my mother-in-law's [B.P.'s] relationship."  The letter sent to L.J., Mr. Douglas' daughter, was a little different as it "explicitly" said to her "that there are three things that her father would like her to know."

{¶7} M.J. acknowledged that he did not know when the letters were "dropped" in the mail. M.J. further acknowledged that he did not know where the letters were processed by the post office.

{¶8} Mr. Douglas also testified at the oral hearing. Mr. Douglas acknowledged authoring and sending the letters to M.J. and L.J. Mr. Douglas previously told the victim, B.P., that he was going to send "our story" "to anyone [he] wanted to because it's [his] freedom of speech." According to Mr. Douglas, he mailed the letters before going to court on December 19, 2022. Mr. Douglas testified that he mailed the letters "[a]bout 1:30 p.m. on the 19th."

{¶9} Mr. Douglas acknowledged that he was in court on December 19, 2022, and that he signed the plea agreement and sentencing order that day. Mr. Douglas testified that he was aware of the conditions of the sentencing order that was timestamped at 4:23 p.m. on December 19, 2022. According to Mr. Douglas, after the plea was completed in the courtroom, he went downstairs to process payment arrangements and the payment plan and he exited the courthouse "maybe ten to five or quarter to fiveish." Mr. Douglas reported to jail "[a]bout 7:50" p.m. that day.

{¶10} Mr. Douglas testified that, between the time he left the courthouse on December 19, 2022, and the time that he reported to the Lorain County Jail, he went to the funeral home where he worked. According to Mr. Douglas, he talked to his boss, M.B., at the funeral home and got his affairs in order. Mr. Douglas testified that he stayed at the funeral home until it was time to report to jail. Mr. Douglas did not attempt to go home after court on December 19, 2022, "because it would have been too far, and I would not have made it back to the jail by 8:00."

{¶11} To support his testimony, Mr. Douglas prepared and testified as to a timeline of his Google maps. According to Mr. Douglas' Google maps timeline, he was at the funeral home from "1:04 to 1:25" on December 19, 2022. Mr. Douglas started driving at 1:25 p.m. on this date,

"heading towards the courthouse, but * * * going past the post office." Mr. Douglas "pulled into the post office between 1:25 and 1:32." Mr. Douglas testified that he "pulled in [the post office] and * * * dropped my mail into the outside post office, the mailboxes[.]" Mr. Douglas then pulled out of the post office, turning left, driving to the Elyria Municipal Court. Mr. Douglas arrived at the Elyria Municipal Court at "1:32 p.m." where he remained until "4:58 p.m." Mr. Douglas left the courthouse at "4:58" and headed back to the funeral home.

{¶12} Mr. Douglas testified that he was "[a]bsolutely" aware that the sentencing order prohibited him from recreating or disseminating the "our story" that is contained in the letters sent to M.J. and L.J. Mr. Douglas stated that he wrote the letters "weeks before" the court order and that he mailed the letters on the way to court on December 19, 2022.

{¶13} While Mr. Douglas presented a Google map timeline setting forth his travels on the way to court on December 19, 2022, he did not provide such a timeline for the remainder of his driving history on said date. Mr. Douglas again testified on cross-examination that he was at the funeral home the entire time after leaving court and reporting to jail on December 19, 2022.

{¶14} M.B., Mr. Douglas' boss, also testified at the oral hearing. M.B. testified that Mr. Douglas was working at the funeral home "[p]rior to him going to court" on December 19, 2022. According to M.B., Mr. Douglas went back to the funeral home after court that evening "around 5:00 and stayed until he had to leave to report to the jail. Probably left around 7:30 or so."

{¶15} The trial court issued its ruling, granting the State's motion for imposition of suspended sentence, at the oral hearing. The court stated that this matter is "very disturbing on several levels" and it found that there was "substantial credible evidence to determine that, Mr. Douglas, * * * violated the terms of [his] suspended sentence." In issuing its ruling, the trial court noted that the letters were undoubtably mailed. If the letters were mailed prior to court on

December 19, 2022, the trial court noted that "there was no disclosure to the prosecution or the Court that they were mailed even though [Mr. Douglas] entered into a sentencing order or a resolution of this case that same day." The court noted that Mr. Douglas "didn't bother to tell anybody, apparently, that [he] had mailed those letters before even though the sentencing order -- and [Mr. Douglas] agreed that there would be no dissemination of those letters."

{¶16} With respect to Mr. Douglas' Google maps timeline, the trial court noted that "[n]othing was presented after court indicating that [Mr. Douglas] didn't stop [at the post office] again after court." With respect to the December 20, 2022, postmark, the trial court found that "[t]he postmark indicates that [the letter] was received by the post office on the 20th. That would indicate that it wasn't mailed, necessarily, earlier in the day; it was mailed later in the day and postmarked the next day."

{¶17} Accordingly, the trial court found "that there is substantial credible evidence that these ["our story"] letters were mailed [after court]." The substantial credible evidence, according to the trial court, was "[t]he fact that [the letters] were postmarked the next day."

{¶18} The trial court issued a written decision on January 10, 2023, finding "substantial credible evidence that [Mr. Douglas] violated the terms of his suspended sentence by mailing copies of 'our story' after sentencing" and ordering Mr. Douglas to immediately serve seven days in jail. Mr. Douglas appeals the trial court's judgment, asserting one assignment of error.

II.

**FIRST ASSIGNMENT OF ERROR**

**THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING THE STATE[']S[] MOTION FOR IMPOSITION OF SUSPENDED SENTENCE[.]**

{¶19} Mr. Douglas argues in his sole assignment of error that the trial court abused its discretion in granting the State's motion for imposition of suspended sentence. We disagree.

{¶20} We review a trial court's decision to impose a suspended sentence for an abuse of discretion. *State v. Walton*, 9th Dist. Lorain No. 09CA009588, 2009-Ohio-6703, ¶ 13. An abuse of discretion implies that the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St. 3d 217, 219 (1983). When applying an abuse of discretion standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶21} A suspended sentence may be imposed when substantial evidence is produced establishing that a condition of sentencing was violated. *See Walton* at *¶* 15; *State v. Garnett*, 2d Dist. Montgomery No. 17535, 1999 WL 812311, *2 (Sept. 30, 1999) ("the appropriate standard * * * is whether any rational factfinder, after viewing the evidence in a light most favorable to the State, could have found substantial evidence to justify imposing [the defendant's] suspended sentence."). Based on the testimony and evidence in the record, we cannot say that the trial court abused its discretion when it granted the State's motion for imposition of suspended sentence, finding that the State presented substantial evidence that Mr. Douglas violated his sentencing conditions.

{¶22} Mr. Douglas acknowledged that he was aware of the terms and conditions of the trial court's sentencing order. Mr. Douglas acknowledged that he authored and mailed the "our story" letters to his daughter and son-in-law. Mr. Douglas argues that he mailed the letters before going to Court on December 19, 2022, and, hence, before the issuance of the trial court's order.

{¶23} The record establishes that "our story" was a significant and important issue addressed by the trial court. Mr. Douglas previously told the victim, B.P., that he would disseminate "our story" to "anyone [he] wanted[.]" The destruction of "our story," and the

prohibition on recreating or disseminating "our story," was a specific condition to Mr. Douglas' suspended sentence.

**{¶24}** The trial court did not find Mr. Douglas' claim that he mailed the letters before his sentence credible, stating that it found "substantial credible evidence that you mailed these letters after the sentencing order was signed by you." The trial judge was in the best position to judge Mr. Douglas' credibility and to give proper weight to his testimony. *See State v. Wilson*, 9th Dist. Medina No. 03CA0136-M, 2004-Ohio-5184, ¶ 24; *State v. Liddle*, 9th Dist. Summit No. 23287, 2007-Ohio-1820, ¶ 40. When we review cases on appeal, we defer to the trial court's determination of credibility. *See State v. Hall*, 9th Dist. Summit No. 27827, 2017-Ohio-73, ¶ 10. The "rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal. Co., Inc. v. City of Cleveland*, 10 Ohio St.3d 77, 80 (1984).

**{¶25}** The "our story" envelopes were postmarked December 20, 2022, the day after the court's plea and sentencing hearing. Regarding the postmark, the trial judge commented that the postmarks indicated that the letters were mailed later in the day after Mr. Douglas was sentenced as they were postmarked the next day. While Mr. Douglas' Google maps timeline shows that he was at or near the post-office before the December 19, 2022 court hearing, no such documentation was produced setting forth his travels after leaving court that day. The trial court did not appear to find it credible that Mr. Douglas mailed "our story" before Court on December 19, 2022, because he "absolutely" knew of its significance to his suspended sentence yet failed to mention that he had mailed the letters before court as he claimed.

**{¶26}** The trial court heard the evidence presented, evaluated the credibility of the witnesses, including Mr. Douglas, and found that there is substantial, credible evidence that Mr. Douglas violated a condition of the sentencing order when he mailed the "our story" letters to M.J. and L.J. after sentencing. Based on our review of the record, we cannot say that the trial court abused its discretion in granting the State's motion for imposition of suspended sentence. Mr. Douglas' assignment of error is overruled.

## III.

**{¶27}** For the reasons stated above, Mr. Douglas' assignment of error is overruled. The judgment of the Elyria Municipal Court, Lorain County, Ohio, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Elyria Municipal Court, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
SCOT STEVENSON
FOR THE COURT

CARR, P. J.
FLAGG LANZINGER, J.
CONCUR.

APPEARANCES:

KENNETH M. LIEUX, Attorney at Law, for Appellant.

MATTHEW KISHMAN, Prosecuting Attorney, for Appellee.